# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# COVINGTON

**CIVIL ACTION NO. 04-218-DLB**

**LAWRENCE BUNCH, ET AL**

**PLAINTIFFS**

**VS.**                                    **OPINION & ORDER**

**W.R. GRACE & CO., ET AL**                              **DEFENDANTS**


**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

    This is a proposed ERISA class action lawsuit. *See* 29 U.S.C. § 1132. Plaintiffs are former and present W.R. Grace & Company ("Grace") employees who participated in the company's 401(K) plan, and claim that the plan's fiduciaries breached their statutory duties, causing them financial loss.

    This matter is presently before the Court upon Defendants Motion to Transfer to the District of Massachusetts, where a similar case involving the same employee pension plan is pending. (Doc. #23). Plaintiffs filed a response (Doc. #27), to which Defendants replied (Doc. #29). The matter is now ripe for review. For the reasons set forth below, the Court concludes that transfer of these proceedings is appropriate. Defendants' motion is, therefore, **GRANTED**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

    This is a proposed class action lawsuit commenced on behalf of approximately 10,000 former and present Grace employees, who participated in the company's Employee Savings and Investment Plan ("Plan"). Specifically, the class is comprised of those

1

employees who owned shares of Grace's publicly-traded common stock from September 1, 1976 to September 15, 2004 (the "class period").  Plaintiffs allege that they lost nearly $40 million as a result of: 1) Grace's deceptive inducements, and 2) the fiduciaries' dereliction of duties and conflicts of interest.[1]

Grace is a global supplier of catalyst and silica products, specialty construction chemicals, building materials, sealants, and coatings.  It has over 6,000 employees, annual sales of approximately $2 billion, and operations in nearly 40 countries.  Like most employers, Grace established the Plan, and offered employees the option to participate, as a safe and convenient way to save for retirement.  Participants were permitted to allocate two to sixteen percent of their pay to a variety of investments, including Grace common stock (Grace Stock Fund), mutual funds, and a Fixed Income Fund.  As an additional incentive, Grace "matched" employee contributions to the Grace Stock Fund.  However, on March 17, 2003, Grace informed all Plan participants that, effective April 21, 2003, they would not be permitted to contribute further to the Grace Stock Fund.[2]  On April 2nd, Grace also announced that, effective April 14th, it would convert to "real-time" trading of its common stock.[3]

---

[1]The named defendants include the Plan's sponsor (Grace), administrator (W.R. Grace Investment and Benefits Committee), trustee (Fidelity Management Trust Company), and investment manager (State Street Bank & Trust Company).  Also named are the directors and officers of Grace.

[2]The *Evans* complaint also alleges that Plan participants were prohibited from: 1) transferring money out of other investment options and into the Grace Stock Fund and 2) redeeming (i.e., selling or transferring) any interest in Grace common stock.

[3]The cash reserves that existed in the Grace Stock Fund as of April 9, 2003 were credited to the fund's participants on a pro-rata basis into the Fixed Income Fund.

On December 8, 2003, Grace made another announcement related to the Plan and Grace Stock Fund - it retained State Street Global Advisors as investment manager, effective December 15, 2003.  According to Plaintiffs, Grace conceded that hiring State Street created "substantial conflicts," but claimed it was necessary to avoid even greater conflicts that would eventually arise.[4]  Plaintiffs allege that Grace delegated to State Street the authority to suspend participant trading in common stock.  They further allege that, on February 27, 2004, Grace authorized State Street to sell all or a portion of the participants' investments in the Grace Stock Fund, contrary to its representations to its employees and the clear language of the Plan.

Deciding that Grace common stock was no longer a prudent investment, State Street commenced a program to sell the stock, and, on April 12, 2004, Grace announced that more than 7.9 million shares held in the Plan had been sold.  The remaining 7.2 million shares were sold via a private sale to D.E. Shaw, a New York-based investment and technology development firm, for $3.50/share.  According to Plaintiffs' complaint, State Street or one of its affiliates subsequently reacquired many of those shares, and made a substantial profit.[5]

Plaintiffs filed the instant suit on October 26, 2004, alleging that "the wholesale sale of [Grace] stock by State Street ... resulted in substantial retirement fund losses to Plaintiffs and Class members."  In particular, Plaintiffs claim that Defendants' actions deprived them

---

[4]By this time, Grace had filed for Chapter 11 bankruptcy in the wake of a flood of asbestos litigation.

[5]Plaintiffs' complaint states that State Street re-acquired the shares at $2.96/share; and shortly thereafter, the stock was trading at nearly $9.00/share.

of the opportunity to exercise control over the Plan assets and their personal investment choices, in contravention of the stated goals and intent of the Plan.  Their complaint charges Defendants with breaching their fiduciary duties of care, loyalty, and ordinary prudence.  Defendants have moved the Court for an order transferring this action to the District of Massachusetts, where a related case is pending, pursuant to 28 U.S.C. 1404(a).

## II. ANALYSIS

### A.   28 U.S.C. § 1404(a) Standard

As an initial matter, the Court notes that the parties agree that this case could have originally been brought in the District of Massachusetts.   Under such circumstances, section 1404(a) authorizes a district court to transfer a case "[f]or the convenience of parties and witnesses, [and/or] in the interest of justice ...."   28 U.S.C. § 1404(a).   In *Norwood v. Kirkpatrick*, 349 U.S. 29 (1955), the Supreme Court made it clear that section 1404(a) is not merely a codification of forum non conveniens; rather, it "permit[s] courts to grant transfers upon a lesser showing of inconvenience."  *Id.* at 32.   Under the prevailing standard, a movant seeking transfer under 1404(a) must demonstrate that the "forum to which [it] desires to transfer the litigation is more convenient *vis a vis* the plaintiff's initial choice."  *Mead Corp. v. Oscar J. Boldt Constr. Co.*, 508 F. Supp. 193, 198 (S.D. Ohio 1981).   However, a court is not authorized to transfer an action where to do so would merely shift the inconvenience from one party to another.  *Fox v. Massey-Ferguson, Inc.*, No. 93-74615, 1995 WL 307485, at *1 (E.D. Mich. Mar. 14, 1994).

4

**B.     Section 1404(a) Factors**

It is well-established that district courts have broad discretion to transfer actions under section 1404(a) in order to prevent waste of time, energy, and money; and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612 (1964).  Commensurate with these purposes, the Court will consider the following case-specific factors in adjudicating Defendants' motion to transfer: (1) the convenience of parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (7) the interests of justice.  *D.C. Micro Dev., Inc. v. Lange*, 246 F. Supp. 2d 705, 713 (W.D. Ky. 2003).

**1.     Convenience of the parties**

The Court finds that this factor weighs in favor of granting Defendants' motion. Although the named Plaintiffs reside in or near Covington, Kentucky (where the Court sits), the class - which is  comprised of nearly 10,000 members - will be equally inconvenienced whether this case is litigated in this District or the District of Massachusetts.  *Fox*, 1995 WL 307485 at *2.   On the other hand, Fidelity and State Street are Massachusetts corporations, and are headquartered in that state.  Similarly, neither State Street nor Grace has any operations, offices, or employees in this District.  Accordingly, the convenience of the parties would be served by transferring the case to Massachusetts.

2.      **Convenience of the witnesses**

The Court finds that, because this case is still in its formative stages (i.e., no discovery has been conducted and no witnesses have been identified), this factor neither favors nor disfavors transfer.  The affidavits attached to Defendants' motion do reveal, however, that many (but not all) of the State Street and Fidelity employees who were responsible for overseeing and managing the Plan assets are located in Massachusetts. On the other hand, many of the other individual Defendants are located in various districts across the country.  Because all witnesses will be inconvenienced to some extent depending on the venue of this litigation, this factor is neutral.

3.      **Ease of access to proof**

The Court finds that this factor weighs in favor of transfer.  Based on the representations of the parties thus far and the nature of the action, the Court anticipates that this will be a document-intensive case.  It is also reasonable for the Court to expect that the majority of the pertinent documents and records will be housed at the corporate defendants' headquarters, which are located in Maryland and Massachusetts. On the other hand, the Court is aware that common practice dictates that depositions of witnesses will take place where the witnesses are located, and will not be affected by the Court's decision.  On the whole, therefore, this factor slightly favors a transfer.

4.      **Availability of process and witness costs**

With regard to the availability of process to compel unwilling, and the cost of obtaining willing witnesses, the Court makes no specific finding except to state that there will certainly be witnesses whose attendance could be compelled in this District, but not in

6

the District of Massachusetts, and vice versa.  Similarly, any expenses related to obtaining willing witnesses will be the same regardless of where this action is ultimately litigated. These factors, therefore, do not weigh for or against transfer.

  **5.**  **Practical considerations and interests of justice**

  Finally, the Court turns to what it considers the dispositive factors in this case - the practical problems that may arise by litigating in this forum, and conversely the advantages of litigating in the transferee forum, and the interests of justice.  As noted by Defendants in their motion, there is a related case involving the same Plan pending in the District of Massachusetts (*Evans v. Akers*, No. 04-cv-11380-WGY).  The Court is mindful that if Defendants' motion is granted, there is a possibility that the cases will be consolidated for discovery and/or trial.  Since the Massachusetts action was the "first-filed," it is incumbent upon this Court to examine the degree of overlap between the two cases in determining whether this case would be more effectively adjudicated in that District.

  Upon review of the complaints filed in both cases, the Court concludes that common questions of law and fact predominate, and the cases would be resolved more efficiently and cost-effectively in the District of Massachusetts.  First, both proposed class actions are brought on behalf of Grace employees who participated in the company's Savings and Investment Plan.  Although the relevant "class periods" are not identical, they are overlapping such that the *Evans* plaintiffs would constitute a "subclass" of the *Bunch* plaintiffs.[6]  Second, both cases raise the same legal issue, i.e., whether the defendants

---

[6]*Evans* is brought on behalf of all persons who were Plan participants between July 1, 1999 and February 27, 2004.  As noted above, the class period in this case is from September 1, 1976 to September 15, 2004.

breached their fiduciary duties under ERISA.  In addition, many, but not all, of the same individuals and parties are named as defendants in both cases.  Finally, the crux of both cases is the same - State Street's determination that Grace common stock was no longer a "prudent" investment and its sale of the stock in April 2004.  Plaintiffs attempt to distinguish the two cases by claiming that *Evans* centers on State Street's continued *investment* in Grace common stock; while this case centers on State Street's *divestment* of the stock.  While this assessment is technically correct, the common thread linking the two cases is State Street's decision to sell.  The *Bunch* plaintiffs claim that they were deprived of any meaningful opportunity to prevent the sale; the *Evans* plaintiffs claim that the sale occurred too late, i.e., by the time the Plan participants had incurred substantial losses.

On a more practical level, the Court anticipates that the discovery in both cases will proceed in a similar direction and, if the instant case is transferred, the cases could be consolidated for that purpose.  In complex class actions such as these, the resultant economical and procedural "savings" would not only be tremendous, but would be in the interests of all parties involved.  Therefore, balancing the factors outlined above, the Court concludes that Defendants' motion is well-taken and transfer of these proceedings to the District of Massachusetts is appropriate.

## III.  CONCLUSION

Accordingly,

**IT IS ORDERED:**

(1)     that Defendants' Motion to Transfer the Proceedings to the District of

Massachusetts (Doc. #23) be, and hereby is, **GRANTED**; and

(2)     the matter is stricken from the active docket of this Court.


This 21st  day of July, 2005.



Signed By:

*David L. Bunning*   DB

**United States District Judge**



G:\DATA\Opinions\2-04-218-TransferGranted.wpd

9